# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- )
MESA IRREVOCABLE TRUST,              )          PLAINTIFF'S COMPLAINT
JUSTIN COX, SPECIAL TRUSTEE          )
                                     )
        Plaintiff,                   )
                                     )          Civil Action No.
v.                                   )
                                     )
TVPX ARS, INC., LIFE OPPORTUNITY     )
FUND I, LP; LIFE OPPORTUNITY         )
FUND II, LP,                         )
                                     )          [ Plaintiff demands trial by jury on all
        Defendants.                  )            counts so triable ]
-------------------------------------------------- )
```

COMES NOW Plaintiff, Mesa Irrevocable Trust, Justin Cox, Special Trustee, ("Plaintiff"), via counsel, and complains of the Defendants, TVPX ARS, Inc. ("TVPX"), Life Opportunity Fund I, LP and Life Opportunity Fund II, LP as follows:

<strong>I.</strong>          <strong><u>THE PARTIES</u></strong>

1.      The Plaintiff, Justin Cox, is the special trustee of the Mesa Irrevocable Trust (hereafter "MESA" or "Plaintiff"), a South Dakota trust created under Trust Agreement effective December 28, 2012 ("Mesa Trust").  The current Investment Advisors of the Mesa Trust are Nancy C. Cox and Alvin E. Cox ("Investment Advisors").  Justin Cox was appointed special trustee for these claims and the related life settlement asset by the master trustee U.S. Bank Trust N.A. (SD) on December 12, 2023.  Mr. Justin Cox accepted the appointment on December 13, 2023.

2.      The Defendant, TVPX ARS, Inc. (hereafter "TVPX"), is a Wyoming corporation acting as a securities intermediary pursuant to an agreement with MESA. TVPX has a business address of 2352 Main Street, Suite 201, in Concord, Massachusetts 01742-2894, County of

Middlesex. The agreement between the parties calls for notices to TVPX to be sent to 39 East Eagle Ridge Dr., Suite 201 North Salt Lake, UT 84504.

3.      The Defendant, Life Opportunity Fund I, LP (hereafter "LOF I"), is a Delaware Limited Partnership engaged in investment activities. LOF I maintains a principal business address care of Stellar Corporate Services LLC, located at 3500 South DuPont Highway, Dover, DE 19901, in Kent County and does business in New York, NY.

4.      The Defendant, Life Opportunity Fund II, LP (hereafter "LOF II"), is a Delaware Limited Partnership engaged in investment activities. LOF II maintains a principal business address care of Stellar Corporate Services LLC, located at 3500 South DuPont Highway, Dover, DE 19901, in Kent County and does business in New York, NY.

5.      At all times material hereto, the officers, directors, employees, and agents of each Defendant were acting within the course and scope of their employment or agency relationships with their respective Defendants, with the knowledge, consent, permission, authorization, and ratification, either express or implied, of their respective Defendants. Furthermore, Defendants TVPX, Life Opportunity Fund I, LP, and Life Opportunity Fund II, LP, together with their officers, directors, employees, and agents, acted as joint venturers, co-conspirators, and schemers in furtherance of the wrongful conduct alleged herein. Their coordinated actions were undertaken with the common purpose of defrauding the Plaintiff and unlawfully benefiting from the misappropriation and misuse of Plaintiff's assets.

## II.        JURISDICTION

6.      Jurisdiction is proper pursuant to 28 U.S. Code § 1332, as there is complete diversity and the amount in controversy exceeds the minimum jurisdictional amount.

7.      In addition, the agreement of the parties stipulates it shall be governed by the laws of the

State of New York and, that for purposes of section 8-110 of the Uniform Commercial Code (UCC), the securities intermediary's jurisdiction shall be the State of New York.

### III.    BACKGROUND

8.      This is an action for, *inter alia*, breach of contract, fraud and deceit, wherein TVPX, representing itself to be a securities intermediary, accepted funds from MESA [(fbo) for the benefit of MESA], and undertook to establish a securities custodial account for the benefit of MESA in connection with the purchase of life settlement interests from Consolidated Wealth Management, Ltd. (hereafter, "CWM").  TVPX failed to transfer the Pacific Life policy number VF52755620 interest to Mesa Irrevocable Trust's custodial account despite having been paid by MESA to do so. MESA has been damaged by the express misrepresentation by TVPX that it had established an account for the benefit of MESA in which it would hold the Pacific Life policy number VF52755620.  The failure of TVPX to obtain the life settlement interests from CWM, lost profits thereon, and the loss, conversion, and embezzlement of the monies paid to TVPX to establish a custodial account for the benefit of MESA, and the loss of, and additional costs incurred in connection with, life settlement interests is in excess of Two Hundred Ninety Thousand Fourteen Dollars and 32/100 ($290,014.32), exclusive of interest and lost profits.

9.      TVPX expressly misrepresented to MESA that it had created a custodial account and that the custodial account would contain the life settlement interests for the benefit of MESA. In fact, TVPX did not place Mesa Irrevocable Trust's Pacific Life policy in a custodial account for Mesa Irrevocable Trust and had not taken possession of any life settlement interests for the benefit of MESA, thereby intentionally defrauding MESA.

10.     TVPX, despite its contractual obligations and representations, failed to establish and maintain a proper securities account for Plaintiff. TVPX did not perform despite confirming the

establishment of the "long-term holding account for policy assets" as represented by TVPX's Chief Marketing Officer, Scott Nielsen, in his email dated September 21, 2018

11.     TVPX referred Plaintiff to a life settlement buyer to in order for Plaintiff to purchase life settlement interests that would be held by TVPX in its custodial account. Defendant TVPX represented that Bryan Cooper was a highly skilled purchaser who had a top track record.

12.     Bryan Cooper was a principal at Consolidated Wealth Management, Ltd. (CWM). Plaintiff relied on Cooper to make investment decisions based on the recommendation from TVPX.

13.     Plaintiff then signed a Life Settlement Contract dated December 11, 2018 between Consolidated Wealth Management, Ltd. (CWM) and TVPX for the benefit (FBO) of MESA based on the representations of Bryan Cooper.

14.     Cooper, TVPX, and CWM did not disclose that CWM was severely undercapitalized, at litigation risk, and could not meet its existing financial obligations, among other omissions and misrepresentations.

15.     TVPX knew or should have known that Cooper and CWM were defrauding potential investors by misrepresenting that:

> a) "At pricing, the average projected life expectancy ("LE") of the portfolio (weighted by purchase amount) was 21.1 months, but for realized maturities it was 8.7 months." [in other words, the policies Defendant Cooper was selecting were allegedly maturing quickly].
>
> b) "As a result, the portfolio IRR [Internal Rate of Return per year] went from an expected 39.3% at pricing to a weighted average realized IRR of 288.8%."
>
> c) Total policy purchases of $42,463,590 with a face value of $77,077,858

(reflecting a balance sheet gain of 45%).

16.      In fact, the above performance representations were false and were not the true track record of Consolidated Wealth Holdings. Mesa has since discovered that Consolidated Wealth Holdings had a very poor track record, was undercapitalized and was subject to many investor complaints and regulatory complaints. TVPX referred Mesa Irrev. Trust to Cooper and CWM for its own financial benefit. They knew or should have known that their referral was to a person and company actively committing fraud against life settlement investors similar to Mesa.

17.      CWM later filed for bankruptcy and MESA submitted a Proof of Claim in the matter captioned In Re: CONSOLIDATED WEALTH HOLDINGS, INC., et al., in the U.S Bankruptcy Court for the Southern District of Texas – Houston Division, Case No. 22-90013 (DRJ).

18.      On October 31, 2022, the Bankruptcy Court entered a Final Decree closing one case against CWM (Case No. 22-90016), but held the lead case against CWM (Case No. 22-90013) and (No. 22-90015) would remain open pending the entry of a final decree by this Court closing such case. See EXHIBIT "A" - Final Decree, U.S. Bankruptcy Court [Doc 494], attached.

19.      Paragraph 6 of the Final Decree states the following:

"Entry of this Final Decree is without prejudice to (a) the rights of the Reorganized Debtor or any party in interest to seek to reopen any of these Affiliate Cases for cause pursuant to section 350(b) of the Bankruptcy Code, and (b) the rights of the Reorganized Debtor, or any entity authorized pursuant to the Plan, as applicable, to dispute, in the Bankruptcy Court or any applicable non-bankruptcy forum, any claims that were filed against the Debtors in these chapter 11 cases as contemplated by the Plan and the Confirmation Order."

20.      Paragraph 10 of the Final Decree, states the following:

"Notwithstanding anything to the contrary in this Final Decree, all of the terms and conditions of

this Final Decree shall be immediately effective and enforceable. The Reorganized Debtors, or <u>any</u> <u>entity authorized pursuant to the Plan, and their respective agents are authorized to take all actions</u> <u>necessary to effectuate the relief granted pursuant to this Final Decree in accordance with the</u> <u>Motion</u>." [emphasis supplied]

21.    As a result, MESA and the claims asserted herein are not subject to any stay and are authorized to proceed in any applicable non-bankruptcy forum.

## IV.    THE FACTS

22.    The Mesa Trust was created in 2012 by Alvin E. Cox, as Grantor. As a fully directed trust, the Investment Advisors of the Mesa Trust are granted the full power to manage and direct all investments of the Mesa Trust.

23.    In 2018, the Mesa Trust began seeking life settlement investments to make money for the Mesa Trust.

24.    Mesa Trust researched investments involving "life settlements" or "viaticals." These investments involve the sale of life insurance policies where the insured wants to cash out for more money than the insurer will pay. Buyers pay that larger sum but assume the premiums and adjust the beneficiary status as needed. Buyers will profit if the net death benefit exceeds the amount paid to the insured in order to take title to the policy. A secondary market exists where the new owners can re-sell in an attempt to profit as the death window shortens.

25.    Mesa Trust was not experienced in purchasing these specialized contracts and required a specialist to broker a transaction.

26.    In 2018, Mesa Trust sought the assistance of TVPX for a recommendation on an adviser and procurer for such life settlements.

27.    Defendant TVPX referred Plaintiff to Bryan Cooper of CWM for life settlements based

on his alleged extraordinary track record. TVPX knew or should have known that CWM had a significantly inflated track record that was not accurate. TVPX knew of the inflated track record because they custodied life settlements for CWM.

28.     TVPX, working with CWM, its agents, servants or employees, represented to MESA, *inter alia*, that MESA's funds would be held securely in its own separate securities and escrow account at TVPX, and that MESA, subject to the direction of Investment Advisors, would have complete control over its purchased policy interest.

29.     In reliance on the representations made by or on behalf of TVPX, Investment Advisors directed Plaintiff to wire Seven Thousand Five Hundred Dollars ($7,500.00) to TVPX for the express purpose of setting up MESA's own securities and escrow account. MESA paid these monies to TVPX.

30.     TVPX never properly set up MESA's own securities and escrow account and failed to properly administer or maintain the accounts.

31.     TVPX received a wire transfer of $200,000 from Plaintiff on or about December 27, 2018. However, TVPX failed to place the Harrelson Policy interest in Plaintiff's custodian account as required. Instead, TVPX transferred these funds to Consolidated Wealth Management, Ltd. ('CWM') without proper authorization or documentation, thereby breaching its fiduciary duty to Plaintiff.

32.     By intentionally, negligently, and fraudulently failing to establish MESA's securities and escrow account, Plaintiff's Pacific Life policy interest was never transferred to Mesa's account and, upon information and belief, remained held in CWM's own securities account at TVPX until later being transferred to LOF II and later to LOF I.

33.     By transferring the funds to CWM without securing Plaintiff's interest in the Harrelson

Policy, TVPX effectively deprived Plaintiff of its rightful ownership and control over the asset it had purchased, constituting a conversion of Plaintiff's property.

34.     TVPX consistently failed to provide essential information and services to Plaintiff. Despite repeated requests from Plaintiff's representative, Justin Cox, TVPX did not provide accurate information about premiums being paid on the Harrelson Policy, failed to furnish updated life expectancy reports or medical records, and was unable to produce account statements or policy information

35.     Plaintiff was damaged by the deceit, fraudulent representations, and breach of contract by TVPX and lost control and ownership of its Policy interest. CWM, who was negligently referred by TVPX, subsequently declared bankruptcy. As a result, the securities and escrow account at TVPX for Mesa either do not exist or were never properly established, contain no holdings, and have a zero value as of the date of this pleading. It was a worthless expenditure for MESA.

36.     These failures constitute not only a breach of TVPX's duties as a securities intermediary and fiduciary but also demonstrate a pattern of deliberate concealment and misrepresentation designed to prevent Plaintiff from discovering TVPX's mishandling of its assets, which it did not discover until 2022.

37.     Despite confirming that the Harrelson Policy was titled to TVPX as Securities Intermediary, TVPX failed to transfer the policy to Plaintiff's securities account.

38.     TVPX made material misrepresentations and omissions to the Investment Advisors in connection with the offer and sale of a life settlement security in violation of Section 10(b) of the Exchange Act of 1934 and the Securities and Exchange Act Rule 10(b)-5.

39.     TVPX made the material misrepresentations and omitted material information to the Investment Advisors with the intent that Investment Advisors rely on said representations and

statements, and upon which they did reasonably rely, to the trust's detriment.

40.     Investment Advisors were unaware of the falsity of TVPX's representations at the times that they were made and believed the representations to be true. Specifically, TVPX represented that an escrow account would be established for the benefit of MESA to hold its life settlement securities, including its Pacific Life policy which was purchased through CWM and which was to be placed in MESA's alleged securities account at TVPX.

41.     The failure to properly establish the securities and escrow account has had serious financial consequences for MESA as the life settlements purchased by MESA remained in CWM's custody and were never transferred to TVPX as the life settlement custodian for the benefit of Mesa Irrevocable Trust, and were instead in CWM's custody when it filed for bankruptcy.

42.     As a result, MESA was deprived of its property and incurred damages, including but not limited to, additional expenses and delay, by having to file a claim with the bankruptcy court, having to pay additional premiums, and being unable to resell its policy interest because the policy interest was never placed in MESA's alleged custodial account.

43.     MESA was forced to choose among several options made available to it by the Bankruptcy Court's restructuring plan. The choices were between a Retention Option and a Replacement Option. MESA chose the Retention Option.

44.     The Retention Option compelled MESA to become subject to additional annual, and increasing, premium calls until the maturity of each Policy (i.e., the death of the insured). This was due to the fact that there were no longer any meaningful premium reserves to maintain many of the Policies. The Premium calls to maintain the Policies in force during the next 10 years were represented to be as follows:

|  |  |
|---|---|
| August 1, 2022: | $23,929.97 |
| 2023: | $27,513.15 |

|        | 2024: | $31,683.20  |
|        | 2025: | $36,543.32  |
|        | 2026: | $42,216.19  |
|        | 2027: | $52,694.78  |
|        | 2028: | $67,096.69  |
|        | 2029: | $79,267.45  |
|        | 2030: | $93,851.03  |
|        | 2031: | $111,352.40 |

45.     MESA has suffered damages in the form of payments made to purchase and maintain the policy without the ability to sell it due to misrepresentations and misconduct by TVPX and LOF I and II. Those payments total at least $290,014.32 and include, but are not limited to:

| Date | Description | Amount |
|---|---|---|
| 2018-12-27 | Disbursement - Investment in Pacific Life Policy VF52755620 | $200,000.00 |
| 2020-07-23 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $6,715.72 |
| 2020-09-04 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $3,357.86 |
| 2020-12-14 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $3,357.86 |
| 2021-03-03 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $3,357.86 |
| 2021-09-03 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $7,326.23 |
| 2022-03-10 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $7,671.42 |
| 2022-06-07 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $1,336.10 |
| 2022-07-14 | Disbursement - Life Ins Premium Due by Acct Pacific LIC #VF52755620 Pacific Life... | $1,348.97 |
| 2022-08-12 | Disbursement - Life Ins Premium Due by Acct Premium on Policy #VF52755620 | $22,581.00 |
| 2023-07-18 | Disbursement - CWM Annual Service Fee on Policy #VF52755620 | $500.00 |
| 2023-07-24 | Disbursement - Pacific Life Qtrly Premium on Policy #VF52755620 Invoice # 8202422 | $10,372.10 |

| Date | Description | Amount |
|---|---|---|
| 2024-07-18 | Disbursement –Service Fee on Policy #VF52755620 | $208.33 |
| 2024-08-14 | Disbursement - Pacific Life Qtrly Premium on Policy #VF52755620 | $21,880.87 |

46.     In 1973, the SEC determined that variable life insurance is a security and not entitled to the exemption set forth in Section 3(a)(8) of the Securities Act. [See Securities Act Release No. 5360 (Jan. 31, 1973)]. In August 2006 and in July 2009, FINRA issued Notices to Members reminding firms that variable life settlements are securities transactions that are subject to the federal securities laws and all applicable FINRA rules. [See FINRA Notice to Members 09-42 (July 2009) ("NTM 09-42"); NASD Notice to Members 06-38 (August 2006)].) FINRA is the primary self-regulatory organization for registered broker-dealer firms doing business in the United States. FINRA was created in July 2007 through the consolidation of NASD and the member regulation, enforcement, and arbitration functions of the New York Stock Exchange.]

47.     TVPX was responsible for the purchase of the Harrelson policy. The Life Settlement Contract listed the purchaser as "TVPX FBO: Mesa Irrevocable Trust, U.S. Bank Trust N.A. (SD, Trustee TVPX Exc Account #7989").

40.     As such, TVPX assumed additional fiduciary responsibilities to thoroughly investigate the sale and fully disclose all material risks and facts to the Mesa Irrevocable Trust.

48.     TVPX concealed and failed to disclose multiple material facts to Mesa Irrevocable Trust, including, but not limited to:

    a.   TVPX concealed that Consolidated Wealth Management's track record was false. CWM was formed in 2014. Therefore, CWM's purported track record from 2013 was impossible.

b.  TVPX failed to disclose that TVPX, Cooper, or CWM were not registered to broker life settlement securities.

c.  TVPX failed to disclose it would not transfer Plaintiff's Harrelson policy purchase into its separate securities account at TVPX.

d.  TVPX knew or should have known that performance representations by Bryan Cooper as to CWM were incorrect.

e.  TVPX knew or should have known that CWM and its investors were facing financial difficulties and that most investors were losing money on their investments.

f.  TVPX should have known that CWM was in serious financial trouble and that its principals had previously been found liable for serious administrative violations involving life settlement investments.

g.  TVPX failed to disclose that CWM's past performance information was false, grossly inflated, and contained numerous inaccuracies.

h.  TVPX failed to disclose that CWM was on the verge of insolvency.

i.  TVPX failed to disclose that Mesa Trust would not own the outright legal title to its life settlements through TVPX, a securities intermediary.

j.  TVPX failed to disclose how much of Plaintiff's investment went to various elements of the purchase, such as fees, costs, and profit.

k.  TVPX failed to disclose that CWM and its family of companies were under, or had been under, investigation in multiple states for selling unregistered securities, had multiple entities administratively dissolved, and were subject to significant litigation risks, among other issues.

l.  TVPX failed to inform Plaintiff about the adverse regulatory history and regulatory

sanctions against CWM and its principals.

m.   TVPX did not disclose that the Harrelson Policy had been divided and sold to more than twenty investors, making the sale of the Policy nearly impossible.

n.   TVPX knew and did not disclose the investment's high illiquidity and inability to be sold because of the number of investors.

o.   TVPX knew or should have known that Cooper failed to disclose the correct premium payments for the Harrelson policy.

p.   TVPX planned to allow Lane Gate Advisors and/or LOF II and/or LOF I to pledge the Harrelson policy to secure financing to purchase without the consent of Mesa Irrevocable Trust.

q.   TVPX knew or should have known that the performance numbers provided by TVPX and Cooper were grossly inflated, fraudulent, and intended to mislead the Investment Advisors and the trust.

r.   That the securities agreement entered into on behalf of Mesa Irrevocable Trust contained numerous other misrepresentations and omissions.

49.   In furtherance of TVPX ARS Inc's fraudulent behavior, it conspired with Bryan Cooper of Life Opportunity Fund II, LP to further transfer the Harrelson policy interests to Cooper's new hedge fund without Mesa's consent or authorization.

50.   On information and belief, on May 24, 2023, TVPX ARS and LOF II fraudulently transferred the Harrelson policy to Life Opportunity Fund I, LP, despite Mesa Irrevocable Trust's interests required to be held in Mesa Irrevocable Trust's separate account.

51.   On Information and belief, TVPX ARS Inc. colluded and conspired with Life Opportunity Fund I and II, LP, funds controlled by Cooper, in an effort to deprive Mesa Irrevocable

Trust of its life settlement interest.

52.     TVPX ARS Inc and Life Opportunity Fund I, LP and Life Opportunity Fund II, LP also conspired to pledge the Harrelson policy as capital for a $20 million dollar loan facility to CrowdOut Capital LLC without permission or consent of Mesa Irrevocable Trust.

53.     TVPX ARS Inc. knew about the operational problems of Consolidated Wealth Management, Ltd. ("CWM"), and failed to disclose those issues when referring Bryan Cooper and Consolidated Wealth Management to Mesa Irrevocable. Trust.

54.     TVPX ARS Inc.'s actions, in collusion with Bryan Cooper and the associated Life Opportunity Funds, have intentionally obstructed Mesa Irrevocable Trust's attempts to recover its investments or mitigate its losses by further transferring the investment to unauthorized third parties and allowing the Harrelson policy to be encumbered by a lender with Mesa's consent.

55.     The charging of fees for services not rendered is indicative of TVPX's broader pattern of deceptive practices and self-dealing at the expense of Plaintiff's interests in coordination with the Life Opportunity Funds, all at Mesa's expense.

4.56.     Upon information and belief, TVPX was not and is not a licensed settlement intermediary in the State of New York. The State of New York requires settlement intermediaries to be licensed. Specifically, NY Ins L § 7804 (2015) provides, in pertinent part, that "[N]o person shall act as a life settlement intermediary in this state without having authority to do so by virtue of a registration issued and in force pursuant to this article".

## AS AND FOR A FIRST CAUSE OF ACTION
### Breach of Contract

56.     Plaintiff restates, realleges, and reavers each and every allegation above, as if expressly rewritten herein.

57.     The acts and/or omissions of TVPX breached its agreement with MESA, despite TVPX having been paid for its services by MESA.

58.     As a direct result of TVPX's acts and/or omissions, MESA suffered damages.

**WHEREFORE**: The Plaintiff, MESA IRREVOCABLE TRUST, JUSTIN COX, SPECIAL TRUSTEE, prays this Honorable Court to enter judgment in its favor, against the Defendant, TVPX ARS, Inc., for breach of contract, awarding damages to MESA, with costs, interest, and legal fees, where applicable, together with such other relief as the court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
### Fraud / Deceit / Fraud in the Inducement

59.     Plaintiff restates, realleges, and reavers each and every allegation above, as if expressly rewritten herein.

60.     TVPX knowingly made intentional and/or negligent misrepresentations to MESA, including that TVPX had properly established MESA's securities and escrow account, which securities account held the Pacific Life policy purchased by Mesa Irrevocable Trust, which was to be held in the TVPX securities account FBO Mesa Irrevocable Trust. TVPX made the representations with the intent that MESA rely upon those representations, and upon which MESA did reasonably rely, to its detriment.  TVPX also omitted key material information in the sale of securities to Mesa Irrevocable trust.

61.     Life Opportunity Fund I and II fraudulently conspired with TVPX ARS Inc. to transfer and hypothecate Mesa Irrevocable Trust's interests to third parties and pledge the Harrelson asset to a lender without Mesa Irrevocable Trust's consent.

62.     Plaintiff, despite exercising reasonable diligence, was unable to discover the fraudulent conduct of Defendants TVPX, Life Opportunity Fund I, LP, and Life Opportunity Fund II, LP (collectively, "Defendants") until after the bankruptcy filing of Consolidated Wealth Management, Ltd. in 2022. Defendants actively concealed their wrongdoing through a series of coordinated misrepresentations, omissions, and deceptive practices, including but not limited to:

A.  TVPX's false assurances that it had established and maintained proper securities and escrow accounts for Plaintiff;

B.  Defendants' collective failure to disclose the true nature of the transactions involving the Harrelson Policy;

C.  The deliberate obfuscation of the ownership and control of Plaintiff's assets;

D.  The systematic withholding of critical information regarding premium payments, policy status, and account statements;

E.  The unauthorized transfer of Plaintiff's assets between entities controlled by or affiliated with Defendants; and

F.  The intentional misrepresentation of the financial health and track record of Consolidated Wealth Management, Ltd.

63.     These concerted efforts to conceal their fraudulent activities went beyond mere non-disclosure and constituted active and ongoing fraud, which could not have been uncovered through the exercise of reasonable due diligence. It was only through the revelations that emerged during the bankruptcy proceedings of Consolidated Wealth Management, Ltd. that Plaintiff gained access to information that exposed the Defendants' fraudulent scheme. This discovery effectively tolled the statute of limitations for Plaintiff's claims, as the fraud was inherently undiscoverable prior to these events.

64.     In a further demonstration of their disregard for legal and ethical boundaries, the parties orchestrated a series of transactions that obfuscated the true ownership and encumbrances of the Harrelson asset despite Bryan Cooper, a principal of the Life Opportunity Funds, knowing that Mesa Irrevocable Trust's interests were being disregarded.

65.     Brian Cooper, Michael Crane and Life Opportunity Fund I and II worked with TVPX to

falsely inflate the amount of premiums that were due on the Pacific Life policy as to Mesa Irrevocable Trust causing Mesa to significantly overpay additional premiums without a corresponding benefit. The amount of overpaid premiums is at least $20,000 according to Plaintiff's expert witness.

66.     As a direct result of Defendants' acts and/or omissions, MESA suffered damages.

> **WHEREFORE**: The Plaintiff, MESA IRREVOCABLE TRUST, JUSTIN COX, SPECIAL TRUSTEE, prays this Honorable Court to enter judgment in its favor, against the Defendants for fraud, deceit, and/or fraud in the inducement, awarding damages to MESA, with costs, interest, and legal fees, where applicable, together with such other relief as the court deems just and proper. The actions demonstrate a pattern of willful misconduct, gross negligence, and conscious disregard for Plaintiff's rights, justifying the imposition of punitive damages to deter similar conduct in the future.

## AS AND FOR A THIRD CAUSE OF ACTION
### Agent Breaching Fiduciary Duty to Principal / Fraudulent Concealment by Fiduciary

67.     Plaintiff restates, realleges, and reavers each and every allegation above, as if expressly rewritten herein.

68.     Defendant TVPX owed MESA a fiduciary duty, including as its alleged custodian of record. TVPX assumed a role in referring and working with Bryan Cooper of TVPX to purchase and securely hold life settlement interests for Plaintiff.

69.     TVPX knowingly made intentional and/or negligent misrepresentations to MESA and aided, abetted, and assisted Bryan Cooper of TVPX in defrauding MESA, including that TVPX had established MESA's securities and escrow accounts, which accounts where allegedly supposed to hold life settlement securities, with the intent that MESA rely upon the representations made by TVPX, and upon which MESA did reasonably rely to its detriment. The misrepresentations by TVPX fraudulently concealed the actual facts from MESA, to its detriment.

70.     Life Opportunity Fund I and II breached their fiduciary duty to Mesa Irrevocable Trust

by transferring or assisting with the transfer of the Harrelson to unauthorized third parties and by allowing the Harrelson asset to be pledged to a lender without Mesa Irrevocable Trust's consent.

71.     TVPX thereby breached its fiduciary duties owing to MESA.

72.     As a direct result of TVPX's acts and/or omissions, MESA suffered damages.

> **WHEREFORE**: The Plaintiff, MESA IRREVOCABLE TRUST, JUSTIN COX, SPECIAL TRUSTEE, prays this Honorable Court to enter judgment in its favor, against the Defendants for being an Agent Breaching Fiduciary Duty to Principal and/or for Fraudulent Concealment by Fiduciary, awarding damages to MESA, with costs, interest, and legal fees, where applicable, together with such other relief as the court deems just and proper. The actions demonstrate a pattern of willful misconduct, gross negligence, and conscious disregard for Plaintiff's rights, justifying the imposition of punitive damages to deter similar conduct in the future.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Conversion

73.     Plaintiff restates, realleges, and reavers each and every allegation above, as if expressly rewritten herein.

74.     The acts and/or omissions of TVPX improperly converted MESA's funds to TVPX's use.

75.     The acts and/or omissions of LOF I and LOF II improperly converted MESA's funds to their use.

76.     Life Opportunity Fund I and Life Opportunity Fund II, LP have committed acts of conversion by unlawfully taking possession of, controlling, and utilizing the Harrelson policy interests that legally belong to Mesa Irrevocable Trust.

77.     As a direct result of Defendants' acts and/or omissions, MESA suffered damages.

> **WHEREFORE**: The Plaintiff, MESA IRREVOCABLE TRUST, JUSTIN COX, SPECIAL TRUSTEE, prays this Honorable Court to enter judgment in its favor, against the Defendants for conversion, awarding damages to MESA, with costs, interest, and legal fees, where applicable, together with such other relief as the court deems just and proper. The actions demonstrate a pattern of willful misconduct, gross negligence, and conscious disregard for Plaintiff's rights, justifying the imposition of punitive damages to deter similar conduct in the future.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Unjust Enrichment

78.  Plaintiff restates, realleges, and reavers each and every allegation above, as if expressly rewritten herein.

79.  TVPX, Life Opportunity Fund I, LP, and Life Opportunity Fund II, LP have been unjustly enriched by its acts and/or omissions.

80.  As a direct result of TVPX's acts and/or omissions, MESA suffered damages.

>    **WHEREFORE**: The Plaintiff, MESA IRREVOCABLE TRUST, JUSTIN COX, SPECIAL TRUSTEE, prays this Honorable Court to enter judgment in its favor, against the Defendants for unjust enrichment, awarding damages to MESA, with costs, interest, and legal fees, where applicable, together with such other relief as the court deems just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Breach of UCC Article 8 § 501, et. seq. (including § 8-504) and of NY Ins L § 7804 (2015)

81.  Plaintiff restates, realleges, and reavers each and every allegation above, as if expressly rewritten herein.

82.  TVPX was and is subject to the indirect holding system rules contained in Part 5 of Article 8 of the UCC, and that such life insurance policies should be credited to the Purchaser's securities account with the Securities Intermediary.

83.  UCC § 8-504 (a) states, in pertinent part, as follows:

>    "A securities intermediary shall promptly obtain and thereafter maintain a financial asset in a quantity corresponding to the aggregate of all security entitlements it has established in favor of its entitlement holders with respect to that financial asset."

84.  TVPX failed to comply with UCC Article 8, including but not limited to UCC § 8-504, despite holding itself out to be a securities intermediary.

85.  Upon information and belief, the Defendants were not properly licensed as securities intermediaries pursuant to NY Ins L § 7804 (2015), and were not privileged to perform any of the acts

and/or omissions they performed to the detriment of MESA.

86.     As a direct result of TVPX's acts and/or omissions, MESA suffered damages.

**WHEREFORE**: The Plaintiff, MESA IRREVOCABLE TRUST, JUSTIN COX, SPECIAL TRUSTEE, prays this Honorable Court to enter judgment in its favor, against the Defendant, TVPX ARS, Inc., for violating the Uniform Commercial Code, awarding damages to MESA, with costs, interest and legal fees, where applicable, together with such other relief as the court deems just and proper.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

87.     Plaintiff restates, realleges, and reavers each and every allegation above, as if expressly rewritten herein.

88.     SEC Rule 10b-5, states that it is illegal for any person to defraud or deceive someone, including through the misrepresentation of material information, with respect to the sale or purchase of a security.

87.     Section 10(b) of the Securities Exchange Act of 1934 imposes liability on any person who employs a manipulative or deceptive device in connection with the purchase or sale of a security.

88.     The acts and/or omissions of TVPX, including but not limited to their intentional, negligent, and fraudulent misrepresentations to MESA in connection with the purchase of life settlements and the establishment of a securities and escrow account for the benefit of MESA, were manipulative, false, and deceptive in breach of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.

89.     As a direct result of TVPX's acts and/or omissions, MESA suffered damages.

**WHEREFORE**: The Plaintiff, MESA IRREVOCABLE TRUST, JUSTIN COX, SPECIAL TRUSTEE, prays this Honorable Court to enter judgment in its favor, against the Defendant, TVPX ARS, Inc., for breach of Section 10(b) of the Securities Exchange

Act of 1934 and Rule 10b-5, awarding damages to MESA, with costs, interest, and legal fees, where applicable, together with such other relief as the court deems just and proper.

**DATE:** September 14, 2024          Respectfully submitted by,

_____ / s / _____

Philip R. Berwish, Esq.
Berwish Law
2 Anderson Lane
Princeton, New Jersey 08540
Tel:  800 547 8717
Fax: 888 743 4723
berwish@gmail.com
[Fed ID # pb0723]